Welcome to the last case of the day. Robin Austin v. The Walgreen Company. May it please the court, opposing counsel. I'm here on behalf of my client Robin Austin. This is a... Good. I am here appealing the district court's determination that a summary judgment was called for in reference to a slip-and-fall claim against Walgreens. Now in this instance, I think the evidence is fairly clear that prior fact could infer from the designated evidence that the property owner in this case, which is Walgreens, knew or by the exercise of reasonable care, would discover the condition and should realize it involved an unreasonable risk of harm to Ms. Austin in this case. Should have expected that... Even if there was water on the floor, Mr. Gladish, tell us what evidence there is that it was visible or had been there long enough that the defendant should have discovered it. You have a witness who said there was no water there. Well, Your Honor, the witnesses... Actually, there's different witnesses that say different things. First of all, Mr. Luna, who was the manager for nine years at the Walgreens store, some of the facts are important too, that it snowed approximately two inches that day, that when the plaintiff was entering the store, that a snowplow was actually leaving the parking lot. And Mr. Luna, based upon his experience, knew that when there was snow in the parking lot, that patrons would track in the snow and they would melt on the floor. So therefore, if you're acting reasonably, you should inspect your floors when you know there's snow outside to ensure that there is no water on the floor. When I asked where the records are to show that inspections took place, there is no records. They made no records in reference to snowfall. They made no records into what was done to ensure that the floors were safe. Now, what also undercuts some of that testimony is that I asked both Mr. Luna and Heather Riff as to when they put out some wet floor signs, because they said there was no water on the floor before or after. But there are photographs that show that they did, at some point in time, put out wet floor signs, more likely after my client fell. But they had a small staff at their store that day, and Mr. Luna acknowledged it was his obligation to go around and ensure that water did not accumulate on the floor. Again, nine years of experience in knowing that this happens. So, going to the evidence, also that the photographs that are in the appellant's brief show that there's water on the floor and my client's laying on the floor. And they got an affidavit from Officer Casey Robinson who said, well, we must have tracked that in. Well, that's actually indirect evidence supporting what the plaintiff said, that when people walked in from the parking lot, they tracked water and or snow into the store. And you can see in the photographs, it's amply demonstrated that there is a lot of water on the floor. And they acknowledge that that water on the floor presents a dangerous condition. And the case law demonstrates that if there's water on the floor, in this instance, that that presents a dangerous condition. And I get my day in front of a jury to make a determination as to breach, causation, and damages, which the district court declared for me. Oh, sorry. Go ahead. I'm sorry. There's no testimony that her clothes got wet when she landed on the floor as she fell. Correct. There's no testimony, but the testimony is from her that she stepped in something wet and her foot went out from under her. She landed on her knee and sustained a serious knee injury, which required surgery. So her own testimony is direct evidence that there was water on the floor. Also, I have indirect evidence demonstrating how that water got onto the floor. And Mr. Luna did not act as a reasonably prudent person would in reference to the management of that store by going around and— That's interesting because I thought she did not see water on the floor before she slipped. She did not. She felt it. But, yeah, she felt her boots slip. Well, not slip. There's a big distinction there, Your Honor, in reference to slip and wet. And I talk about that. And if I could read a section for you on page 6, it states, and this is the question by opposing counsel, When you fell, how did you fall? Describe how your body maneuvered. Answer, I was walking towards the cash register. My right foot hit something wet and all my weight landed on my left knee. I went completely down, all my weight on my knee, then immediately fell backwards on my back. Question, so your right foot, did it go forward? Answer, yes. And you felt something wet under your right foot. Answer, right. That's what I slipped on. Now, I go through and I provide a definition to the court where it talks about slippery versus wet. And there's a big distinction there. Slippery just means that you slide. But with wet, it says specifically, and I go back to my high school days of the American Heritage Dictionary, where it says, wet is defined as covered, moist, and soaked or saturated with a liquid, especially water, while the definition of slippery is causing or tending to cause sliding or slipping. Now, in this instance, why is that important? Because there's a bunch of case law that says, if I don't know what caused me to slip, then I cannot show that there's a foreign object on the floor and there's a breach in this instance. However, my client does not say that she slipped on an unknown substance, which could actually be her shoes. All of us know you get new shoes. You could have slipped because of your own shoes. In this instance, we know that she slipped on something wet, and we know how the wetness got there from the melting snow. So I think it's clear that my client has presented a case where there is sufficient evidence to allow this case to go forward. There's also a discussion, which I think is very important in reference to 8034 about the medical records in this case, where she discusses slipping on water, and she also states that she slipped on wetness. When the emergency personnel arrived at the scene, they noted that she stated that she slipped on something wet. However, the doctors know that the emergency room where she was taken by ambulance states as follows. Robin Austin, 52-year-old female, presents to the emergency department with left knee pain status post-fall. Now, why is it important that he noted that? Well, he says post-fall, but he doesn't say how she felt. So in reference to the medical diagnosis, we have to know what is the etiology of what caused her to fall. Did she faint? Did she have a stroke? Did she have a heart condition? Why did she fall? Well, the court struck this discussion because it says as follows. Patient states she was walking to Walgreens this afternoon when she slipped on water and fell on her left kneecap. Denies head injury, loss of consciousness, headache, and neck pain. Patient complains of no other symptoms or modifying factors at this time. So Dr. Kroll, who is the emergency room doctor, took into account what the cause of her fall was. Now, according to Rule 804, it states statements made for purpose of medical diagnosis or treatment and describing medical history, past or present symptoms, pain or sensations, or, and this is what's important, the inception or general character of the cause or external source thereof as reasonably pertinent to the diagnosis and treatment. Dr. Kroll, based upon his note, states specifically that it was important for him to note what caused her to fall because he went on, he just didn't say, well, she hurt her knee. He says how she went about hurting her knee. Now, why is this important? Well, because the case law that was cited by defense counsel in this instance basically supports the district court's determination by citing to an unpublished opinion from another district court and that case clearly does not take into account or correctly apply the factors that we have to look at in reference to making these determinations. Are you watching your time? I will take about two more points. The Gong case states whether the statements are of the type reasonably pertinent to the physician in providing treatment. I think that's absolutely correct. The Frederick case, which dealt with somebody slipping on ice, but the ice was never seen by the person or never found to be present by anybody. In that instance, they say, well, we're not going to look at the medical records. But the reason to look at the medical records there is because the plaintiff said unquivocally, I never saw ice ever anywhere. In this instance, we have a wet floor, which caused her to fall and sustained a severe injury. And I'll reserve my last minute for rebuttal. Thank you. It's still morning. Good morning, Your Honors. My name is Edward Hearn. I represent Walgreens in this case. I want to start by answering Judge Rovner the question that you posed, my opponent, about how long, what was the evidence that there was anything on the floor for a period of time before this occurred? And the answer to that is there isn't any. What the plaintiff relies on in this case is general statements about, and there was some testimony that it was snowing outside, but what there wasn't any testimony was, in this case, was anybody was tracking it in. It was along the lines of, do you know that if it's snowing outside, people can. What time did this event occur? It was midday, Your Honor. I don't recall the exact time, but it was midday. Shouldn't there be a presumption that people were walking in? Yeah, I don't think there's any problem with the presumption that there are people walking in. The issue is— Well, don't those people, if they're walking through snow, bring snow in? They can. They can, and that was the evidence. The problem, though, is this accident didn't happen at the front door, Your Honor. The testimony from the plaintiff was that this occurred towards the back of the store. Some of the other witnesses says, well, it was near the photo area of the store. All of them agreed it was not around the front of the store. It was either the testimonies towards the back of the store or towards the side of the store, not the front of the store, and the problem with that is, while I think it is a fair assumption that people can track snow into the entrance of the store, the testimony in this case was it could happen, but there wasn't any evidence that it did happen, and certainly no evidence that it occurred in the area where the plaintiff fell, and that's part of the problem with the evidence in this case. Now, the plaintiff cites two cases, and both in the appellant's brief and the reply brief, the plaintiff says the Bars case, B-A-R-S-Z, and the Golba case control the outcome of this case. Those are Indiana Court of Appeals cases dealing with slips and falls, but there's two ways to distinguish those cases, and the first is, in both of those cases, the plaintiff identified something, and there was corroborative evidence that supported that something that got the plaintiff to the jury in those cases. In the Bars case, the plaintiff said, I slipped on something like ice or grease, and the corroborating evidence was there was a water glass sitting next to the plaintiff, found right next to the plaintiff right after the accident. The water that my opponent is referring to is water that a couple of witnesses testified about that was present at least seven minutes after this accident. One came from the plaintiff's friend, Stella Vanderheer, who was at the plaintiff's son-in-law's son's home and got a phone call and drove to the store, and her estimate is it took seven minutes to get there, so at a minimum seven minutes later. But in that Bars case, this water glass was found next to the plaintiff immediately after the accident, and the Indiana Court of Appeals said those two things together. I slipped on something like ice or grease, and the corroborative evidence of a water glass being on the floor immediately following the accident was enough to get past summary judgment. The Golba case was the other case the plaintiff relies on, both in the opening and closing brief, and in that case the plaintiff testified, I slipped on something and I stepped on a stone, and she says it was either a stone or a BB in that case. So again, the plaintiff identified something in that case that she stepped on, and that is lacking in this case. In this case, Ms. Austin says, I stepped on something wet. Is that sufficient? No. What is water? Water is wet. She stepped on water. It could be water. It could be grease. It could be milk. In which case, she'd still be liable. Because I think that the plaintiff has to prove what it was, and that's the second reason that the Bars and the Golba cases are distinguishable. They were decided under Indiana law. You know, we opened today with a federalism discussion, and we're going to close with a federalism discussion because Indiana uses Trial Rule 56, but in a very different way than it is used in federal court, and we cited the Adkins case, which Judge Mannion, you were on, and Judge Rovner, you were on, and that was a similar case. It was a slip-and-fall case or a trip-and-fall case in a Meyer parking lot. Judge Tender decided that case out of the Southern District of Indiana, and this court distinguished Bars and Golba, the two cases the plaintiff relies on in this case, and said those don't apply because, for the reasons I just explained, there was some corroborative evidence. But Judge Tender did something in the district court case in that Adkins case, and he picked up on what I just mentioned to you, and that is the difference between Indiana's Rule 56 procedure and federal Rule 56 procedure. The Indiana Supreme Court has said at Rule 56, and this conflicts with the standard at trial, but at Rule 56 stage, the defendant is required to disprove the claims of the plaintiff, and Judge Tender recognized that in the Adkins case, which we cited, and then this court picked up on that and distinguished those two cases, and I think that's another reason, the lack of the corroborating evidence. The plaintiff wants you to speculate or the jury to speculate that it was water, but that's not what she says. In fact, counsel just did a good job of explaining the definition of something wet. It says especially water, but it doesn't have to be water. It could be a myriad of things, and then the plaintiff wants to make the leap that there was water in the store because of snow, but that is not what the plaintiff says. She doesn't say I slipped on water. In fact, she says I speculate that it was water many times in her deposition. I guess it was water, but she says I stepped on something that was wet. So in order to conclude that it's water, you'd have to speculate, and again, I think the standard between the federal rule and the Indiana rule also makes a difference because in the cases that the plaintiff is relying on, those were decided. Judge Tender says this in the district court opinion in the Atkins case on what the defendant didn't establish in those cases. And so I think those two reasons distinguishes the case. Now one little word about the piece of evidence. First of all, I think Judge Martin, the trial judge in this case, did a nice job of saying, look, the reason somebody falls can be relevant to a diagnosis, but as opposed to they have an imbalance or a disorder. But what they fall on and whether that establishes fault is not admissible. Now I think he made the right decision in that regard, but I also think this piece of evidence is a red herring, and if it's admissible or not doesn't determine the outcome of whether the plaintiff can make the case, and that is because the medical records, the plaintiff says, I slipped on water. Well, she explains this in her deposition. She says, the reason I think it's water is because I'm guessing it's water. I speculate that it's water. So the foundation for those statements that are made in the medical records are not enough, establish that that piece of evidence is not enough to sustain the plaintiff's burden at summary judgment. Was this a serious injury? The plaintiff will tell you it is. She had a fracture. So it's not a neck and back type soft tissue injury case. She had an objective fracture as a result of this. Then it's serious. Broken bones hurt. I guess it's all relative. Is she an invalid and unable to move anymore? No, it's not that kind of a case. But on the other hand, it's not a soft tissue case. So I'll just conclude. I have a minute left by saying that I think the cases that we have cited where the plaintiff says, I don't know what I slipped on, are controlling. I think the summary judgment standard in looking at the Indiana cases as opposed to the cases that we relied on, which were Indiana cases out of federal court, like the Friedrich case that Judge Lee decided in Fort Wayne, similar set of facts and said it was not sufficient under the federal rule. And the Jewell case versus Kroger decided by Judge Magnus Stenson out of Indianapolis, similar case. By the way, in that case, Judge Magnus Stenson admitted a medical record. She thought that it was relevant but still found that that was insufficient to establish the plaintiff's case and granted summary judgment. So we would ask that the court affirm the district court's order. Thank you very much. Briefly, Your Honor, in reference to the Atkin case, in that case the plaintiff could not say what, if anything, caused the person to fall, so it has no applicability here. It was a parking lot case, couldn't say whether it was a crack or anything. There was nothing there to show what caused the fall. As for corroborative evidence, the photographs show the corroborative evidence. We know that snow was being tracked in. It was being tracked in before, it was being tracked in afterwards. So there's corroborative evidence as to how the water got there. As for the Barres case, it states that if there's a foreign object on the floor, as was pointed out by Your Honor, the fact that we have water on the floor, it's wet, she says water, whichever. It is a situation where there's a foreign object on the floor, and in reference to the questions put before about constructive notice, the fact that Walgreens took no steps to ascertain when they had noticed that this condition could exist, they did nothing to inspect their property, and they allowed this to happen, and we know it was happening because the emergency personnel were there after Stella got there, and she said she was there within a few minutes of the fall, and there was water all over the floor. So there's enough evidence to allow me to go forward. Thank you. I would ask that you reverse the district court's determination. Thank you, counsel. Thank you to both counsels. The case will be taken under advisement. The court stands adjourned.